UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MOHSEN KACHOOEE, <br><br> Plaintiff, <br><br> v. <br><br> DAVID ALLEN, *et al.*, <br><br> Defendants. | Case No. 1:25-cv-00139 (TNM) |

### MEMORANDUM OPINION

Mohsen Kachooee is an Iranian citizen whose Turkish employer wants to send him to the United States for business. So he applied for a visa. After an October 2023 interview at the U.S. Embassy in Armenia, his visa was refused and his application was placed into "administrative processing." Ex. A at 2, ECF No. 1-3. That was the last substantive update he received. To speed things up, he now sues the Embassy's Deputy Chief of Mission and the Secretary of State. The Government moves to dismiss the case. The Court will grant that motion because there is no remaining nondiscretionary duty for the Court to compel and the suit is barred by the doctrine of consular nonreviewability.

### I.

Kachooee is an Iranian citizen who lives in Turkey with his family. Compl. ¶¶ 5, 13, ECF No. 1. His Turkish employer decided to transfer him to the company's U.S. branch. Compl. ¶ 6. To permit the transfer, the company filed an L-1 nonimmigrant visa application on Kachooee's behalf. Compl. ¶¶ 16, 17. Kachooee's son is a derivative beneficiary of that application. Compl. ¶ 17.

Kachooee and his son sat for an interview in October 2023 at the U.S. Embassy in Armenia. Compl. ¶ 19. Soon after, Kachooee was told that his "case has been refused under Section 221(g) of the United States Immigration and Nationality Act (INA)." Ex. A at 2. The application then went into "administrative processing," which the consular officer said "can take several months." Ex. A at 2. The Consular Officer has taken no action since. *See* Ex. E, ECF No. 1-7 ("Case Last Updated: 25-Oct-2023 . . . A U.S. consular officer has adjudicated and refused your visa application.").

Anxious for a decision, Kachooee asked about his application several times—both on his own and with help from Sen. Cory Booker. Ex. C at 2–4, ECF No. 1-5; Ex. D at 2–3, ECF No. 1-6; Compl. ¶¶ 23–24. But the administrative processing remains ongoing. Compl. ¶¶ 23, 25. Kachooee, meanwhile, remains in limbo with his family in Turkey. Compl. ¶¶ 5, 7. The delay has harmed his business plans and family life. Compl. ¶¶ 5–7.

Unsatisfied, Kachooee sued the Deputy Chief of Mission at the U.S. Embassy in Armenia and the Secretary of State, arguing that they have unreasonably delayed a final decision on his application.[1] *See* Compl. ¶¶ 31–53. He thus asks this Court to order them to render a decision on his application "within fifteen (15) calendar days." Compl. ¶ 55. The Government moves to dismiss. Mot. to Dismiss, ECF No. 8. That motion is now ripe.

---

[1] Marco Rubio, the current Secretary of State, is substituted for his predecessor as a defendant. *See* Fed. R. Civ. P. 25(d). The claims against the Secretary will, however, be dismissed because the Secretary cannot give Kachooee the relief he seeks. *See Yaghoubnezhad v. Stufft*, 734 F. Supp. 3d 87, 97–98 (D.D.C. 2024); 8 U.S.C. § 1104(a) (preventing the Secretary from taking "functions conferred upon the consular officers relating to the granting or refusal of visas"). David Allen, meanwhile, appears to be an appropriate defendant and does not argue otherwise. *See* 22 U.S.C. § 3927 ("[T]he chief of mission to a foreign country . . . shall have full responsibility for the direction, coordination, and supervision of all Government executive branch employees in that country."). So the case will not be dismissed on standing grounds.

2

II.

The Government moves to dismiss the complaint and petition for a writ of mandamus under Federal Rule of Civil Procedure 12(b)(6).[2]  The Court applies the familiar standards under that rule.  A complaint survives a 12(b)(6) motion only if it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  To do so, its factual allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  But the Court need not "assume the truth of legal conclusions." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015).

III.

Kachooee brings a familiar sort of visa challenge.  It fails twice over.  The Government has finally refused his application, so there is no remaining nondiscretionary duty for the Court to compel.  For the same reason, the suit is also barred by the doctrine of consular nonreviewability.

A.

Kachooee seeks a writ of mandamus and relief under 5 U.S.C. § 706.  Compl. ¶¶ 31–53.  "To state a claim for unreasonable delay under 5 U.S.C. § 706, or to make out an entitlement to mandamus relief, a plaintiff must identify a nondiscretionary duty held by the defendant." *Sedaghatdoust v. Blinken*, 735 F. Supp. 3d 1, 7 (D.D.C. 2024); *accord Norton v. S. Utah*

---

[2]  The Government also moves to dismiss under Rule 12(b)(1), Mot. to Dismiss at 7, but does not make any argument about subject matter jurisdiction.  As much as the Government argues that the consular nonreviewability doctrine deprives this Court of subject matter jurisdiction, that is incorrect. *See Dep't of State v. Muñoz*, 602 U.S. 899, 908 n.4 (2024).

3

*Wilderness All.*, 542 U.S. 55, 63–64 (2004). Because Kachooee has not pointed to an unfulfilled duty the Government owes him, his claims fail. *See Sedaghatdoust*, 735 F. Supp. 3d at 7.

To start, the Government is incorrect that *Karimova v. Abate*, 2024 WL 3517852 (D.C. Cir. July 24, 2024), requires dismissal, Mot. to Dismiss at 11–12 n.2; *see Akter v. Rubio*, --- F. Supp. 3d ---, 2025 WL 1950884, at *4–5 (D.D.C. 2025). Unpublished circuit opinions "may be considered persuasive authority, but they do not constrain a panel of the court from reaching a contrary conclusion in a published opinion after full consideration of the issue." *In re Grant*, 635 F.3d 1227, 1232 (D.C. Cir. 2011); *see* D.C. Cir. Rule 36(e)(2). The Government acknowledges as much but says that district courts are still obligated to follow what D.C. Circuit panels are not. Mot. to Dismiss at 11–12 n.2. But the Government offers no authority in support of that argument. Nor can it. After all, "[i]f an opinion has intentionally disclaimed precedential value, that disclaimer would attach to the opinion, not the court considering the opinion." *Akter*, 2025 WL 1950884, at *4.

Though not binding, *Karimova* is persuasive. And that decision, as well as others from this Court, rightly conclude that the only discrete duty the Government owes a visa applicant like Kachooee is "to grant or refuse a visa." *Sedaghatdoust*, 735 F. Supp. 3d at 7; *Karimova*, 2024 WL 3517852, at *4; *Yaghoubnezhad v. Stufft*, 734 F. Supp. 3d 87, 99–100 (D.D.C. 2024). This duty arises from the Immigration and Nationality Act (INA) and its implementing regulations. The INA says that "[a]ll nonimmigrant visa applications shall be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(d). And its implementing regulations specify that once "a visa application has been properly completed and executed . . . the consular officer must issue the visa, refuse the visa, or . . . discontinue granting the visa." 22 C.F.R. § 41.121(a).

4

The crux of this dispute is whether the Government has fulfilled that duty. The Government says it has—stressing that Kachooee's visa application was "refused" in October 2023 under INA § 221(g), 8 U.S.C. § 1201(g). Mot. to Dismiss at 10. Kachooee disagrees, arguing that the Government's § 221(g) refusal was pro forma, and that the real final decision cannot occur until his application undergoes administrative processing. Mot. to Dismiss Resp. at 13–16, ECF No. 9. So, Kachooee says, the Government's duty is unfulfilled and this Court can compel the Government to complete it. *Id.*

That is incorrect. As the Court explained at length in *Yaghoubnezhad*, neither the INA nor its implementing regulations require the Government to timely complete—or complete at all—"administrative processing" once it has refused a visa under § 221(g). 734 F. Supp. 3d at 100–03; *see Karimova*, 2024 WL 3517852, at *4 (reasoning that 5 U.S.C. § 555(b) does not impose such a duty). That same analysis largely disposes of Kachooee's arguments here.

Kachooee does, however, raise one novel argument. He says that the Government's promises to him that he will receive another visa adjudication after administrative processing is completed affirmatively imposed a duty on the Government to complete his administrative processing. Mot. to Dismiss Resp. at 14, 22. But Kachooee offers no authority to support his argument that promises of this sort impose a legal obligation on the Government. Further, the standard for showing agency action subject to compulsion under the APA or mandamus is high. "The law must not only authorize the demanded action but require it; the *duty must be clear and indisputable.*" *Illinois v. Ferriero*, 60 F.4th 704, 715 (D.C. Cir. 2023) (cleaned up). Stray governmental remarks do not satisfy that standard.

**B.**

Consular nonreviewability also bars Kachooee's suit. The idea behind this doctrine is simple. Because the "admission and exclusion of foreign nationals is a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control," a consular officer's decision "to admit or to exclude an alien" is not ordinarily subject to judicial review. *Dep't of State v. Muñoz*, 602 U.S. 899, 907–08 (2024) (cleaned up); *see also Sedaghatdoust*, 735 F. Supp. 3d at 6–7.

Resisting the doctrine's application here, Kachooee again insists that the Government's § 221(g) refusal of his application was not final. Mot. to Dismiss Resp. at 18–22. Consular nonreviewability, he says, does not apply when "no final decision" has been made and the plaintiff instead challenges "the delay in rendering a final decision." *Id.* at 20. That is incorrect. Consular nonreviewability bars judicial review of the decision to place an application into "administrative processing" for "discretionary re-adjudication" as well as "the substance of a consular officer's visa determination." *Yaghoubnezhad*, 734 F. Supp. 3d at 103–04 (cleaned up); *Sedaghatdoust*, 735 F. Supp. 3d at 6–7.

The facts of this case illustrate why. The consular officer, in his discretion, denied Kachooee's application under § 221(g). Ex. A at 2. And that decision was final, as already discussed. *See supra* Part III.A. The Government can reconsider and grant Kachooee's application after more factfinding. But the Court has no authority to compel it to do so. *Yaghoubnezhad*, 734 F. Supp. 3d at 104; *Sedaghatdoust*, 735 F. Supp. 3d at 6–7. Kachooee tries to evade that limitation—framing his claim as a mere request to expedite its decision. Mot. to Dismiss Resp. at 22–23. "But that is, in effect, no different from ordering the State Department to reopen a dispositive adjudication." *Yaghoubnezhad*, 734 F. Supp. 3d at 104. "A substantive

6

change in the outcome of State's visa determination is, after all, the ostensible purpose of requiring State to conclude administrative processing." *Id.* "Even if such an order does not expressly mandate State to reach a specific outcome on Plaintiffs' visas, it still affects the substance of State's initial refusals by requiring their reexamination." *Id.* And that is exactly what the consular nonreviewability doctrine forbids. *See Muñoz*, 602 U.S. at 907–08.

### IV.

The Government has validly refused Kachooee's application for entry into this country. At this point, "[t]he Judicial Branch has no role to play." *Muñoz*, 602 U.S. at 908. The Court will therefore grant the Government's motion to dismiss. A separate Order will issue today.

Dated: October 23, 2025                             TREVOR N. McFADDEN, U.S.D.J.